IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MORRIS J. PETTIGREW, SR., #359809 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. GLR-12-1712 |
| KATHLEEN S. GREEN, *WARDEN* | * | |
| SEGREGATION LIEUTENANT, *WEST COMPOUND (NAME UNKNOWN)* | * | |
| OFFICER REVELLS, *PROPERTY OFFICER*[1] | * | |
| PROPERTY OFFICER *WEST COMPOUND (NAME UNKNOWN)* | * | |
| OFFICER K. BRIGHT, *CORRECTIONAL OFFICER* | * | |
| OFFICER ROLLEY, *CORRECTIONAL OFFICER* | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

I. Background

On June 8, 2012, Plaintiff Morris J. Pettigrew, Sr., filed this 42 U.S.C. § 1983 Complaint seeking declaratory and injunctive relief and compensatory and punitive arising from his incarceration at the Western Correctional Institution in Cumberland, Maryland. Plaintiff states that while housed at the Eastern Correctional Institution ("ECI") on January 16, 2011, Defendants Rolley and Bright conducted a random cell search, during which they read and confiscated his legal paperwork in retaliation for his questioning various officers about access to the medical department in the facility. ECF No. 1. He claims that his paperwork and other property were taken to a closet before it was taken to the ECI property room. Plaintiff alleges that despite his repeated oral and

---

[1] The docket shall be amended to reflect the correct name of this Defendant as Officer Revel.

written requests for access to the legal papers, his requests were denied or he was told that Defendant Revel, the property officer, would call him. Id.

Plaintiff additionally claims that on January 31, 2011, he was sent to administrative segregation and while so assigned filed two grievances apprising Defendant Warden Kathleen Green of what had previously transpired. ECF No. 1. He contends that he did not receive a response to his grievances. Plaintiff additionally claims that the state appellate court informed him that he had until March 7, 2011, to file a petition in his criminal case, but because he was repeatedly denied requested access to his materials, he missed the filing deadline. He alleges that his legal paperwork was not returned to him until May 5, 2011. Id.

All named Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment[2] and Plaintiff has filed an Opposition thereto.[3] ECF Nos. 19 & 21. The matter is ready for consideration and may be determined without oral hearing. See Local Rule 105.6 (D. Md. 2011).

## II.     Standard of Review

Because matters outside the pleadings will be considered, Defendants' Motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

---

[2] The Complaint against the Maryland Division of Corrections and Eastern Correctional Institution was summarily dismissed. ECF No. 8.

[3] Plaintiff also submitted a Motion for Leave to File an Amended Complaint, filed after his receipt of Defendants' dispositive motion. ECF No. 21. Said Motion is denied as moot. He seemingly seeks to add a statement from another inmate, one "J.H.," which states, in part,"I seen the inmate thats complaining getting

2

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)).

In Anderson, 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

---

search a c/o and he jumped like he was touch in the rong way." Id. at p. 5.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp., 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III. Discussion

Access-to-Courts Claim

A. Facts

Defendants Bright and Rolley, who are employed at ECI, state that on January 16, 2011, Bright conducted a random cell search of Plaintiff's cell. During the search she noted an excessive amount of paperwork, which she considered a fire hazard. ECF No. 19, Ex. A at Bright Decl.; Ex. B at Rolley Decl. Bright indicates she explained to Plaintiff that he had more than the allowable amount of paperwork in his cell and she would permit him to retain 1.5 cubic feet of the paperwork and the rest would be sent to the property section. She further informed him that he could make arrangements with property staff to go through his paperwork to decide if he needed to keep any additional documents. Id. According to Bright, when the officers tried to go through the paperwork to have Plaintiff pick out the 1.5 cubic feet of paperwork he wished to keep, he became very agitated and argumentative, making it impossible to conduct the review. As a result, all the paperwork was confiscated, placed into two boxes, and sealed. Id. Plaintiff was present during the entire cell search and was given a confiscation sheet for the confiscated property, which was taken to "property." Bright affirms that Plaintiff never said anything about upcoming court cases or

4

deadlines. Rolley confirms Bright's memory of the cell search. ECF No. 19, Ex. B at Rolley Decl.

Defendant Revel is employed in the Property Room for ECI's East Campus. She affirms that on an unspecified date after January 16, 2011, she called Plaintiff to the Property Room in order to go through the confiscated property. Id. , Ex. C at Revel Decl. Revel maintains that the Plaintiff was advised: as to the 1.5 cubic feet limitations on the amount of cell paperwork to be retained by inmates; that he could select the papers he wanted to retain up to the cubic feet; and all other papers would be mailed to an address of his choosing. Revel affirms that Plaintiff chose the papers he wanted to retain and told Revel to destroy the rest. Plaintiff signed a statement acknowledging same. Id., Ex. C at Revel Decl.; Ex. D at Balderson Decl. & p. 4. Defendants state that Plaintiff's criminal cases have been closed since June 2008. Id., Ex. E.

Defendants argue that Plaintiff has failed to "allege any facts that would support a finding of liability" against Defendant Green. They assert that she had no personal involvement in the incident and cannot be held liable under a respondeat superior theory. In addition, Defendants assert that Plaintiff has failed to show that he was denied access to the courts because he provides no particulars as to what conviction or convictions he may have been attacking, he fails to indicate if he was represented by counsel in those proceedings, and he has not shown how Defendants prevented him from filing a state court criminal appeal or post-conviction petition.

In his Opposition, Plaintiff claims that during the confiscation of his materials he notified Defendants that the paperwork being confiscated was "needed for accessing the courts for an appeal by Plaintiff. At least a portion was. This portion was below the allowable 1.5 cubic feet for

paperwork. They were notified it was legal material, or 'court papers.'" ECF No. 21 at p. 1. He contends that he requested the return of the paperwork at least six times before it was returned. Id. at p. 2.

B. Analysis

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 825 (1977); see also Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). The Supreme Court clarified the Bounds decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. See Lewis v. Casey, 518 U.S. 343, 349 (1996). According to the Lewis opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355.

Plaintiff's access-to-courts claim is relatively uncomplicated and straightforward. He complains that his legal paperwork was confiscated in January of 2011; that despite repeated requests and filed remedies, the materials were not returned to him until May of 2011; and the delay caused him to miss a March 2011 filing deadline imposed by the Maryland appellate court. Plaintiff has failed to show how the alleged lack of access to his material rendered him unable to file a "petition" in that court. As indicated by Defendants, he does not identify what conviction he was appealing, nor does he indicate if he was represented by counsel in those proceedings.[4] He has

---

[4] The state court docket shows that Plaintiff was convicted of false imprisonment and reckless endangerment and sentenced to 15 years on September 15, 2009. See State v. Pettigrew, Criminal No. 208179002 (Circuit Court for Baltimore City). Further, he was convicted of first-and second-degree assault and sentenced to 20 years, ten years suspended, on September 15, 2009. See State v. Pettigrew, Criminal No. 108136011 (Circuit Court for Baltimore City). The convictions were affirmed on appeal on April 5, 2011.

failed to address these issues or put forward any opposition material which shows a Fourteenth Amendment deprivation. No access-to-courts violation has been demonstrated.

Moreover, Defendant Green would also be entitled to judgment on the basis that as ECI Warden, she was not personally involved in the events surrounding Plaintiff's claims. In cases brought under 42 U.S.C. § 1983, there is no respondeat superior liability. This means that there must be personal involvement by each Defendant in the alleged violation. A supervisor will only be held liable if the plaintiff can demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be GRANTED. Judgment will be granted in favor of Defendants and against Plaintiff. A separate Order follows.

May 2, 2013 /s/

George L. Russell, III
United States District Judge